IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Thomas D., | ) | |
|         Plaintiff, | ) | |
| | ) | No. 21-cv-50204 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| Kilolo Kijakazi[1], | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
|         Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas D. brings this action seeking judicial review of the denial of his application for disability benefits. For the following reasons, the Court grants Plaintiff's motion for summary judgment, denies the Commissioner's motion for summary judgment, and reverses and remands the decision of the ALJ.

I.    **BACKGROUND**

Plaintiff suffers from multiple physical and mental impairments, but his appeal focuses only on his mental limitations. Thus, the Court limits its background to this medical evidence in the administrative record.

Plaintiff filed an application for disability insurance benefits on April 19, 2018, alleging disability beginning February 26, 2018. R. 13. The record demonstrates that at least as early as April 8, 2017, Plaintiff had been diagnosed with major depression based in part on his score on his Patient Health Questionnaire (PHQ-9). R. 317-22. Nurse Practitioner Gurney's notes from that visit report that they discussed starting Plaintiff on bupropion for his depression, but he

---

[1] The Court substitutes Commissioner Kilolo Kijakazi for former Commissioner Andrew Saul. Fed. R. Civ. P. 25(d).

wanted to discuss further. R. 321. In October 2018, Plaintiff reported feeling stressed and scored even higher on the PHQ-9, which indicated severe depression. He was diagnosed with uncontrolled depression and anxiety on October 15, 2018, and Dr. Martinez prescribed him Zoloft (sertraline) 50mg. R. 305. When Plaintiff went for a follow-up on November 12, 2018, Dr. Martinez reported that Plaintiff's depression was "better controlled" and that Plaintiff was "happy with his improvement, not suicidal." R. 305-06. Dr. Martinez also noted that Plaintiff's PHQ-9 score dropped from 25 in October to 4. R. 306.

In October 2019, Plaintiff underwent two consultative examinations. On October 9, 2019, Dr. Ramchandani reviewed Plaintiff's medical records and performed an examination. Dr. Ramchandani noted "depression for 6 months-stable on medicine" in the report and included Zoloft as one of Plaintiff's current medications. R. 342-43. Dr. Ramchandani's final impression indicated "Depression" among nine other diagnoses. R. 344.

On October 22, 2019, Dr. Dean, Psy.D., reviewed Plaintiff's records and performed an evaluation, indicating "an October 2019 SSA medical exam that noted 'depression' and other medical things." R. 350.[2] Dr. Dean reported that Plaintiff stated, "Emotionally I am mostly depressed about my health and personal life situations. I have never had any mental health care." *Id.* After a full psychological, social, and occupational functioning assessment, Dr. Dean diagnosed Plaintiff with "Adjustment Disorder with Depressed Mood" and "Cannabis Use Disorder – Mild." R. 352. Dr. Dean concluded that, "As observed the claimant could manage if awarded benefits." R. 352. Additionally, later medical records from June 2020 show that Plaintiff was again evaluated for depression and his PHQ-9 scores were high enough to indicate depression. R. 356.

---

[2] The phrase "and other medical things" is not the Court's phrase.

On November 24, 2020, ALJ Lewin held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 44-80. Plaintiff and Vocational Expert (VE) Tobey Andre testified at the hearing by video.

Plaintiff testified that he was living by himself for the past two months, having previously lived with his ex-wife and her daughter and two grandchildren. R. 46. He had a driver's license but did not own a vehicle, only driving once a week to Walmart, which was about three miles from his home. R. 45. Plaintiff testified that he had difficulty showering, as he had fallen twice in the past, and that he did not cook for himself because he did not have access. He ate mostly sandwiches and cereal, and occasionally, something from a restaurant. R. 46. He smoked about ten cigarettes a day—less when he was busy working, and he smoked marijuana occasionally, having cut back from his daily habit about six months ago. R. 47. Plaintiff testified that for the two months before the hearing, he had been working part-time at the hotel where he was living, working seven eight-hour shifts every two weeks and making ten dollars per hour. R. 48-49. Before that, he worked full-time at a call center for eight years. R. 50.

Plaintiff testified that he worked at three different call centers during that eight-year period, the first being a "complaint type department" from August 2010 through September 2013. R. 69. From January 2005 to January 2006, Plaintiff worked as a self-employed book and gift distributor, where he occasionally carried between twenty-five to thirty pounds. R. 70-71. Plaintiff also testified that from January 2006 to January 2008, he worked for an automotive warranty company submitting claims to the manufacturer. R. 71.

Plaintiff testified that he can't work at a call center anymore because, among other things, the type of calls that came in were "too stressful" for him. R. 51. When the ALJ asked why he could not work in general at that time, Plaintiff testified, "I don't have the physical ability to be

3

able to perform a normal job." R. 51. He went on to explain how his feet and hands tingled, even with his medication, and how that affected his ability to be up and about on his feet. R. 51-55. When asked if his depression kept him from working, Plaintiff testified, "not now it doesn't, but at some time it was a major interference with me working." R. 55. He never received any psychiatric treatment, but only answered questionnaires with his primary care physician and took the prescribed medication. R. 55. He testified that the doctor did not have him do the PHQ-9 last time he was there because they felt the depression was finally under control. R. 55.

Plaintiff's attorney asked for clarification regarding how his depression interfered with his past work, and Plaintiff explained that it was difficult to deal with people calling about complaints who were angry and blaming the person answering the phone. R. 59. He also testified that he got in trouble at work for having short or inappropriate responses to customer calls. R. 59-60. He was also asked how the medication was helping his depression. R. 60. Plaintiff described how the stress and negativity he previously experienced left him contemplating suicide but moving to the hotel and beginning part-time work there helped some of his depression. R. 60-61.

The VE testified that Plaintiff's past relevant work consisted of work as an information clerk and insurance clerk. R. 72. The VE also noted that Plaintiff's self-employment consisted of work as a salesperson (books), and his current position consisted of work as a hotel clerk. R. 72-73. The ALJ posed several hypotheticals to the VE, and when asked whether there would be any competitive work for an individual who was off task more than 15% of the workday or who missed two or more days of work per month, the VE answered "No." R. 76.

On December 11, 2020, the ALJ issued a ruling, finding that the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and

4

423(d), respectively. R. 13-23. The ALJ found that Plaintiff had the following severe impairments: history of myocardial infarction with stenting; hypertension; obesity; and diabetes mellitus with neuropathy. R. 15. The ALJ also found that Plaintiff had hypothyroidism and a medically determinable mental impairment of adjustment disorder, both of which were non-severe. R. 16. With regard to Plaintiff's mental impairment, the ALJ found that Plaintiff had "mild limitation" in the first and fourth functional areas under the paragraph B criteria. R. 16. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform sedentary work with the following limitations: occasionally use foot controls with the bilateral lower extremities; never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, stoop, kneel, crouch, crawl, and balance; frequently feel with the bilateral hands; avoid concentrated exposure to extreme heat/cold and hazards including dangerous, moving machinery and unprotected heights; and a cane for ambulation. R. 18. As can be seen, no limitations were included for the non-severe mental impairment, which by itself is not necessarily erroneous, but critically there is no explanation why no limits were included. Based on this and the VE's testimony, the ALJ determined that Plaintiff was capable of performing past work as an information clerk or insurance clerk—the jobs that correspond with his work in the call centers and as a warranty specialist. R. 22.

## II.     LEGAL STANDARD

A reviewing court cannot reconsider factual findings or make independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Commissioner's factual findings are conclusive if supported by substantial evidence, and a reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If there is enough evidence

that would allow a reasonable person to determine that the conclusion can be supported, there is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971); *see also Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A court must conduct a critical review of the evidence and must remand the matter if the Commissioner's decision lacks evidentiary support or adequate discussion. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). And in the Seventh Circuit, the Commissioner's reasoning must "build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

### III.  ANALYSIS

Plaintiff argues that the ALJ failed to articulate why he omitted Plaintiff's mild mental functional limitations when formulating the RFC. Dkt. 8, at 5. The Commissioner argues that Plaintiff's mental limitations were non-severe and caused no functional limitations, and that there is no binding precedent requiring an ALJ to do so. Dkt. 13, at 1-5. In reply, Plaintiff asserts that the ALJ's decision did not adequately explain why the mental impairment—albeit mild—was not included. Dkt. 15, at 3-4 ("The ALJ's error here is a failure of articulation."). Plaintiff then string cites seventeen (17!) cases supporting his contention that ALJs commit legal error when they fail to account and explain in some way in the RFC for mild mental limitations when ALJs find claimants can perform anything other than unskilled work. Dkt. 15, at 2. Notably included in this list is *Wells v. Colvin*, 727 F.3d 1061, 1068-71 (10th Cir. 2013), which explains this articulation requirement in detail. Judge Mary Margaret Rowland has similarly addressed this issue: "In assessing a claimant's RFC, 'the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe,' and may not dismiss

evidence contrary to the ALJ's determination." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017).

> The Social Security Act requires an explanation when benefits are denied:
>
> Any such decision by the Commissioner which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). In the Seventh Circuit, long-standing precedent requires an ALJ to build an "accurate and logical bridge" in making his RFC determination. *See, e.g., Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Further, the SSA's own guidance requires ALJs to consider both severe and *non-severe* impairments in making an RFC finding. SSR 96-8P, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.") (emphasis added). But an ALJ "must consider only limitations and restrictions attributable to medically determinable impairments." *Id.* at *2.

In this case, the ALJ found that Plaintiff's mental impairment was medically determinable. R. 16. The ALJ also found that Plaintiff had "mild" functional limitation in two of the paragraph B criteria: understanding, remembering or applying information; and adapting or managing oneself. R. 16; 20 C.F.R. §11.00(G)(3)(b)(i), (iv). But, as Plaintiff asserts, there is no real discussion of these limitations in the RFC other than the broad statements that the ALJ performed "careful consideration of the entire record" and that "the undersigned has considered all symptoms." R. 18. In fact, there are only two mentions of the mental impairments, neither of which is related to fashioning the RFC. When describing Plaintiff's testimony, the ALJ stated, "When asked, the claimant admitted that depression does not keep him from working and he has had no mental health treatment outside of medications prescribed by his primary care provider."

7

R. 19. When evaluating the records from Plaintiff's primary care provider, the ALJ reported, "though [Plaintiff] stated he was stressed, he admitted he was not suicidal." R. 20. And when summarizing the medical opinions and administrative medical findings considered, the ALJ omitted mention of Plaintiff's mental non-severe impairments from the DDS consultants' reports at both the initial and reconsideration levels. R. 22.

The Commissioner asserts that the ALJ's findings rest on substantial evidence because "no doctor found that plaintiff had severe mental impairments, no doctor found that plaintiff had mental limitations, and evidence of mental health treatment and allegations were few in an already thin record." Dkt. 13, at 2. But the Commissioner's argument is based on the premise that Plaintiff had no functional limitations, despite the ALJ's opinion articulating credible, mild functional limitations in two areas. Here, the Commissioner misunderstands Plaintiff's argument. Plaintiff does not argue that the ALJ failed to consider his mental impairments at all, rather, he asserts that the ALJ failed to account for the mild functional limitations caused by the mental impairments in forming the RFC. As Plaintiff asserts, "the ALJ's RFC fails to explain why the limitations he found credible at step two would not impact [Plaintiff's] ability to work." Dkt. 8, at 5.

The Commissioner also misunderstands Plaintiff's position when she states, "Plaintiff asks the court to . . . establish a categorical rule that any assessment of mild mental impairment *requires* the ALJ to provide RFC limitations." Dkt. 13, at 3 (citing Dkt. 8, at 3-9). That is not Plaintiff's argument. And this Court, through this order, is not establishing that type of categorical rule. The Commissioner has created a straw man. Instead, Plaintiff asserts that the ALJ is required to consider and explain how Plaintiff's mental impairments would or would not impact Plaintiff's ability to perform work at the given levels. Dkt. 8, at 5-8 (ALJ "failed to

8

explain" and "made no attempt to explain" and "performed no analysis of how [Plaintiff's] step two mental limitations would affect his ability to work"). At its core, Plaintiff is arguing that the Commissioner must follow the Administration's own requirements, which is not asking a lot. Plaintiff's argument is rather pedestrian and certainly uncontroversial, despite the Commissioner's parade of horribles argument. *See Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly in reviewing denials of disability benefits by the Social Security Administration's administrative law judges, the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling.") (emphasis in original). The Commissioner's assertion that the "ALJ need not accommodate mild mental limitations . . . where the ALJ properly discredits allegations of mental impairments and cites to contrary evidence" is accurate. Dkt. 13, at 3 (citing *Felts v. Saul*, 797 F. App'x 266, 269 (7th Cir. 2019)). But Plaintiff's entire point is that the ALJ did not take the necessary steps to properly discredit or cite contrary evidence. It is true that at least one court in this District has held that "extensive discussion at step two of Plaintiff's mental health treatment records as well as her functional abilities is sufficient to trace the ALJ's reasoning for declining to include mental limitations in the RFC finding." Dkt. 13, at 4 (quoting *Donna J. v. Saul*, No. 19-cv-02957, 2021 U.S. Dist. LEXIS 102542, at *31-32 (N.D. Ill. June 1, 2021)). But the Commissioner has not demonstrated that the ALJ's step two discussion was "extensive." It wasn't.

    Moreover, the ALJ's decision does not address the context of Plaintiff's testimony that his depression does not keep him from working. R. 19. This is the exchange from the transcript:

    Q.    Does your depression keep you from working?

    A.    No, but my depression not now it doesn't, but at some time it was a major interference with me working.

9

R. 55-6. The ALJ did not ask a clarifying question, but simply went on to ask Plaintiff if he had any psychiatric treatment or was ever hospitalized for psychiatric reasons. Later, Plaintiff's attorney asked a critical follow-up question:

> Q. You also mentioned that depression had an interference with your working in the past. What did you mean by that?
>
> A. With my depression, I was so down on myself already and them I'm -- I'm working at a call center and dealing with people who are calling up with complaints and they're upset and they're mad and they're angry and nobody -- they put all the blame on the person that answers the call and so it was just hard.

R. 59. Plaintiff further clarified that his depression was, at least in part, tied to his work at the call center and his living situation at the time, explaining that he was doing well now that he was working for the hotel and living alone.[3]

> Q. So basically, it's fair to say that this change in your environment with not living with others and that not having to deal with the people at the call center so much has helped some of the depression, is that a fair summary?
>
> A. Yes, I would say so, yes.

R. 60. The ALJ did not sufficiently take Plaintiff's testimony into account on this point when he stated, "When asked, the claimant admitted that depression does not keep him from working and he has had no mental health treatment outside of medications prescribed by his primary care provider." R. 19. This finding ignores Plaintiff's critical follow up testimony without any explanation. If the ALJ disbelieved Plaintiff on this point, the ALJ never said so or why. Thus, the ALJ has failed to build the necessary accurate and logical bridge to his RFC findings. Without expressing an opinion as to the outcome of such analysis, the Court finds that the ALJ's

---

[3] The ALJ found that Plaintiff's job as a hotel clerk is not past relevant work. R. 22.

decision lacks evidentiary support or adequate discussion with regard to Plaintiff's non-severe, mild mental limitations. *See Eichstadt*, 534 F.3d at 665.[4]

## IV.   CONCLUSION

For the reasons stated above, the Court denies the Commissioner's motion for summary judgment, grant's Plaintiff's motion for summary judgment, and reverses and remands this case.

Date:   June 2, 2022            By:     _____
                                        IAIN D. JOHNSTON
                                        United States District Judge

---

[4] Because the Court is remanding the case, it does not address Plaintiff's constitutional challenge.